UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERBERT G., <br>     Plaintiff, <br> v. <br> ANDREW SAUL, <br>     Defendant. | Case No. 18-cv-06832-JSC <br><br> **ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. Nos. 24, 25 |

Plaintiff seeks social security disability benefits for Type II diabetes, left shoulder pain, back pain, and right leg pain. (Administrative Record ("AR") 246.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his application for benefits. (Dkt. No. 1.)[1] Now before the Court are Plaintiff's and Defendant's motions for summary judgment.[2] (Dkt. Nos. 24 & 25.) Because the decision of the Administrative Law Judge ("ALJ") to deny benefits is supported by substantial evidence and free of legal error, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A). Second, the impairment or impairments must be

---

[1] Record citations outside of the administrative record are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 11 & 12.)

severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual function capacity," ("RFC") the claimant can still do her "past relevant work"' and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see also* 20 C.R.F. §§404.1520(a), 416.920(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted). However, "a decision supported by substantial evidence will still be set aside if the ALJ does not apply proper legal standards." *Id.*

## BACKGROUND

### I. Procedural History

Plaintiff filed a Title II application for social security disability benefits in April 2015, (AR 198), and a Title XVI application for supplemental security income in May 2015, (AR 192). The Commissioner first denied Plaintiff's applications in September 2015, (AR 80 & 92), and again denied the applications upon reconsideration in March 2016, (AR 136). Plaintiff then filed a request for a hearing before an ALJ. (AR 143.) On February 27, 2017, Plaintiff testified by

telephone before ALJ Cheryl Tompkin. (AR 30-68.) Plaintiff's counsel and Vocational Expert ("VE") Dr. Roxane L. Minkus were present at the hearing. (AR 30.)

The ALJ issued an unfavorable decision in October 2017. (AR 14.) The decision became final in September 2018 after the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action thereafter. (Dkt. No. 1.)

## II. Administrative Record

Plaintiff was born on September 12, 1963 and resides in Livermore, California. (AR 198.) He asserts that he has been unable to work since June 1, 2011 due to Type II diabetes, left shoulder pain, back pain, and right leg pain. (*See* AR 69-70.) Plaintiff previously worked as an auto mechanic and shop cleaner from 2010 to 2011, as a dishwasher from 2008 to 2010, and as a construction laborer from 1979 to 2006. (AR 323.) At the February 2017 hearing Plaintiff's counsel amended the disability onset date to September 12, 2013, to coincide with Plaintiff's 50th birthday. (*See* AR 68.)

### A. Medical Evaluations and Physician Statements

#### 1. Medical Source Statement from Treating Physician

The parties attribute to Dr. Catherina Fu a "Diabetes Medical Source Statement" from Axis Community Health Center ("Axis Health") dated November 19, 2014, and they do not dispute that Dr. Fu is Plaintiff's treating physician.[3] The statement reports that Plaintiff was first treated at Axis Health in April 2013 and then seen "every 1-3 months." (AR 434.) The statement indicates that Plaintiff was diagnosed with Type II diabetes and left shoulder pain, and experiences the

---

[3] Dr. Fu's name appears only once in the record—an attachment to the November 2014 medical source statement. (*See* AR 438.) That document is an X-ray report from NorCal Imaging and it is signed by Dr. Fu. (*Id.*) The medical source statement attributed to Dr. Fu does not contain her name and based on the signature appears to have been written by Nurse Practitioner Edward Liu, of Plaintiff's primary care provider Axis Health. (*See* AR 437.) Indeed, Mr. Liu completed a physical examination of Plaintiff one day prior to the medical source statement, (*see* AR 329), and the non-examining state agency physicians attributed the November 2014 source statement to Mr. Liu, (*see* AR 72, 76, 84, 88, 90, 98, 99, 103, 105, 111, 112, 116, 118). However, because (1) the record indicates that Axis Health is Plaintiff's primary care provider, (2) the ALJ attributed the November 2014 medical source statement to Dr. Fu and the parties do not dispute that characterization, (3) it is not clear from the signature alone who actually authored the medical source statement, and (4) attributing the source statement to Dr. Fu does not prejudice Plaintiff, the Court adopts the ALJ's and the parties' view and attributes the statement to Dr. Fu.

3

following symptoms: fatigue, excessive thirst, chronic skin infections, muscle weakness, retinopathy, and frequency of urination. (*Id.*) Of those, the statement notes the following "clinical findings and objective signs": blurred vision, frequency of urination, dry mouth, and pain in the left shoulder. (*Id.*) The statement further notes that Plaintiff is on an active medication regimen. (*Id.*)

Dr. Fu opined that in an eight-hour workday Plaintiff could sit for two hours, stand for one hour, and walk for one hour. (AR 435.) However, Dr. Fu opined that Plaintiff did not "need a job that permits shifting positions at will from sitting, standing or walking." (AR 436.) Dr. Fu further opined that Plaintiff would need to take one to two unscheduled breaks during an eight-hour workday for 5-10 minutes before returning to work. (*Id.*) Plaintiff would not need to elevate his legs while sitting. (*Id.*)

Dr. Fu opined that Plaintiff could frequently lift less than 10 pounds, occasionally lift 20 pounds, and rarely lift 50 pounds. (*Id.*) Dr. Fu noted, however, that Plaintiff could "rarely" lift with his left shoulder. (*Id.*) Dr. Fu opined that Plaintiff had significant limitations with reaching, handling or fingering because he could never use his left arm for reaching. (*Id.*) Dr. Fu opined that Plaintiff's condition would cause him to miss more than four days of work per month. (*Id.*)

### 2. Physical Examination by Neurologist Farah M. Rana

Dr. Rana is a consultative examining physician who met with Plaintiff on June 30, 2015. (AR 461.) Dr. Rana's report notes that Plaintiff's chief complaints were left shoulder pain, Type II diabetes, and enlarged prostate. (*Id.*) Plaintiff reported worsening pain in his left shoulder since a motorcycle accident and subsequent surgery and noted "difficulty in elevating his arm all the way up." (*Id.*) Plaintiff denied "any numbness or tingling in his hands or feet," or "any retinal or renal complications of diabetes." (*Id.*)

On examination Plaintiff's "left shoulder was tender to touch" and exhibited a reduced range of motion. (AR 462.) Plaintiff had full range of motion in all other joints, his gait was stable, he did not require an assistive device, and he exhibited full motor strength. (AR 462-63.) Dr. Rana's diagnoses included history of Type II diabetes, and "chronic left shoulder pain." (AR 463.) Dr. Rana noted that an October 2013 X-ray of Plaintiff's left shoulder "showed severe

4

glenohumeral osteoarthritis." (AR 461, 463.)

Dr. Rana's "functional capacity assessment" opined that Plaintiff can stand, sit, and walk six hours out of an eight-hour workday, with breaks. (*Id.*) Further, Plaintiff "can carry 10 pounds frequently and 20 pounds occasionally." (*Id.*) He can "handle, manipulate, feel, and finger objects without any problem," but "would have difficulty working above his head with his left arm because of left shoulder pain." (*Id.*) Dr. Rana opined that Plaintiff did not need an assistive device to ambulate, and "can take public transportation." (*Id.*) Dr. Rana also noted that Plaintiff "can manage his day-to-day chores." (AR 461.)

### 3. Non-Examining State Agency Physicians

In July and September 2015, non-examining state agency physicians reviewed Plaintiff's medical records and opinion evidence and adopted Dr. Rana's functional capacity assessment because it was consistent with the objective evidence and Plaintiff's subjective complaints. (AR 77.) The state agency physicians determined that while Plaintiff's impairments cause some limitations on his ability to perform work activities, those limitations do not prevent him from performing other work in the national economy. (AR 80.) Thus, the state agency physicians concluded that Plaintiff's "condition is not severe enough to keep [Plaintiff] from working." (*Id.*) Two different state agency physicians made the same determination upon reconsideration of Plaintiff's application in March 2016. (*See* AR 107.)

### B. The ALJ's Decision

On October 3, 2017, the ALJ issued a written decision denying Plaintiff's applications and finding that he was not disabled within the meaning of the Social Security Act based on the testimony, evidence, and the Social Security Administration's five-step sequential evaluation process for determining disability. (AR 17-26.)

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since June 1, 2011. (AR 19.) At step two, the ALJ determined that the medical evidence indicated that Plaintiff's diabetes, "status post left shoulder surgery," and left shoulder osteoarthritis constitute severe impairments. (*Id.*) The ALJ determined at the third step that Plaintiff "does not have an impairment or combination of impairments that meets or medically

5

equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 20 (citing 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).)

Before reaching step four, the ALJ determined that Plaintiff "has the residual functional capacity to perform light work" as defined under 20 CFR §§ 404.1567(b) and 416.967(b), with the following limitations:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit 4 hours and stand/walk 1 hour at a time for a total of 4 hours; 1 unscheduled 10 minute break in addition to normal breaks during the workday; occasionally crouch and crawl but frequently stoop and twist; can frequently look down, turn his head to the left or right, and look up and hold his head in a static position; can rarely (defined as less than 2.5 hours in an 8-hour workday) reach or work overhead with his left upper extremity; and should avoid unprotected heights.

(AR 21.) In making her RFC determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 22.) The ALJ cited in support of this finding Plaintiff's treatment records, the objective medical evidence, the medical opinion evidence, and Plaintiff's reported use of a bicycle for transportation. (AR 21-24.)

As for the medical opinion evidence, the ALJ afforded the "greatest weight to the opinions of consultative examiner Dr. Rana and the State agency medical consultants, who found that [Plaintiff] is capable of performing light work but limited with left overhead reaching." (AR 23.) The ALJ noted that the opinions were "consistent with and well-supported by the objective evidence." (*Id.*) The ALJ afforded "partial weight" to the opinion of Plaintiff's treating physician, Dr. Catherina Fu, finding that the "sit, stand, and walk limitation[s]" noted by Dr. Fu were "overly restrictive and not linked to any objective evidence." (AR 23-24.) In sum, the ALJ determined that Plaintiff's RFC "is supported by the treatment notes that showed mild to moderate limitations with [Plaintiff's] left shoulder but otherwise relatively unremarkable findings on examination along [with] the well-support[ed] opinions of Dr. Rana and the State agency medical consultants." (AR 24.)

At step four, the ALJ cited the VE's hearing testimony and concluded that Plaintiff "cannot perform past relevant work" as a construction worker. (AR 24.) Finally, the ALJ determined at step five that Plaintiff could perform "other work that exists in significant numbers in the national economy" based on his "age, education, work experience" and RFC. (AR 25.) In sum, the ALJ determined that Plaintiff was not "under a disability, as defined in the Social Security Act, from June 1, 2011, through the date of [the ALJ's] decision."[4] (AR 25.)

**DISCUSSION**

The parties dispute whether the ALJ: (1) properly assessed the medical opinion evidence; (2) properly assessed Plaintiff's subjective symptom testimony; and (3) committed reversible error at step five. The Court addresses each argument in turn.

**I.    Medical Opinion Evidence**

**A.    Legal Standard**

In assessing an ALJ's consideration of the medical opinion evidence, courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examiner nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

An ALJ may reject the "uncontradicted opinion of a treating or examining doctor" only by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks and citation omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons'

---

[4] Although Plaintiff's counsel amended the disability onset date to September 12, 2013 at the hearing, the ALJ's decision continued to use June 1, 2011 as the onset date. However, neither Plaintiff's motion nor his reply raises an issue with that apparent discrepancy. Indeed, Plaintiff's motion notes that he "alleges disability beginning 6/1/11." (*See* Dkt. No. 24 at 8.)

7

supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986), *superseded by statute on other grounds as recognized in Bunnell v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990). Likewise, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. The opinions of non-examining physicians may "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Ultimately, "[t]he ALJ must do more than offer his conclusions" when rejecting a medical opinion; instead, she "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Thus, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014). In conducting its review, the ALJ must consider the entire record and cannot rely only on portions of the record while ignoring conflicting evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (finding error where "ALJ selectively relied on some entries in [plaintiff's] records from San Francisco General Hospital and ignored the many others that indicated continued, severe impairment.").

**B.     The ALJ's Analysis**

Plaintiff asserts that the ALJ erred in affording only partial weight to the opinion of treating physician Dr. Fu. The Court disagrees. Because Dr. Fu's opinion was contradicted by Dr. Rana and the state agency medical consultants as to Plaintiff's limitations regarding reaching with his left arm, sitting, standing, and walking, the ALJ was required to provide "'specific and legitimate reasons' supported by substantial evidence in the record for [rejecting the opinion]." *See Lester*, 81 F.3d at 830 (citation omitted). The ALJ did so.

8

The ALJ afforded partial weight to Dr. Fu's opinion overall and "little weight" to "the sit, stand, and walk limitation" and the limitation of "never being able to reach with the left arm" because those limitations were "overly restrictive and not linked to any objective evidence." (AR 23-24.) Regarding the limitations caused by Plaintiff's left shoulder condition, the ALJ's decision notes that treatment records in October 2013 indicated left shoulder pain with only moderate limitations in range of motion. (AR 22-23 (citing AR 414-418).) The cited treatment record indicates that on October 2, 2013, Plaintiff reported "mild-moderate" left shoulder pain that is "dull and throbbing" but relieved with prescription pain medication and over the counter medication. (AR 414.) On examination, the treatment provider noted tenderness to touch over the entire left shoulder, and "moderately reduced" range of motion due to pain with an inability to raise his left arm greater than 90 degrees. (AR 417-18.) The treatment provider noted that the "[m]ost significant problem is [limited range of motion] on L shoulder [due to] pain, but [it] does not prevent [Plaintiff] from engaging in gainful activities." (AR 418.)

The ALJ next noted that an October 2013 X-ray of the left shoulder revealed "severe glenohumeral osteoarthritis"; however, subsequent treatment notes in 2014 described Plaintiff's left shoulder pain as "mild." (AR 23 (citing AR 428, 431).) Indeed, the cited treatment records, dated November 18, 2014—one day before Dr. Fu's medical source statement—note "mild" pain with motion. (AR 428, 431.) The ALJ also cited Dr. Rana's June 2015 opinion and noted that since June 2015, Plaintiff's "primary complaint was related to his skin infection/rash that was being treated with clindamycin, prednisone, and triamcinolone," and the remaining physical examinations in the record "were relatively normal except for his skin condition." (AR 23.) The cited treatment records support the ALJ's finding and indicate that Plaintiff was treated at ValleyCare Medical Plaza ("ValleyCare") between April 2015 and December 2016 for an abscess on his right leg and a recurring skin infection/rash that was variously attributed to insect bites, cellulitis, dermatitis, unknown etiology, folliculitis, scabies, and methamphetamine use. (*See* AR 474-520.)

None of the ValleyCare treatment records indicate subjective complaints or treatment related to Plaintiff's left shoulder condition. Indeed, treatment records from April, August, and

9

December 2015 and June, July, and December 2016 indicate "normal" range of motion in all four extremities without pain. (*See* AR 476, 487, 492, 503, 512, 519.) A treatment record from October 2015 likewise indicates no "joint pain or back pain." (*See* AR 508.) In other words, substantial evidence of record not only demonstrates that Dr. Fu's "reach" limitation was overly restrictive, but that Plaintiff's left shoulder condition appeared to *improve* after Dr. Rana's June 2015 examination.

As for Dr. Fu's asserted "sit, stand, and walk" limitations associated with Plaintiff diabetes, the ALJ's discussion of the medical evidence noted that Plaintiff has "a long history of uncontrolled diabetes" and "periods of non-compliance with his medication." (AR 22.) The ALJ further noted that even where Plaintiff's diabetes remained uncontrolled, on examination he was negative for "fatigue, pain, or weight gain." (*Id.*) The ALJ recognized that Plaintiff's associated symptoms included "retinopathy of the left eye with blurred vision, frequent infections, frequent urination, and polydipsia," but when Plaintiff was compliant with his medication, his diabetes was stable. (*Id.*) The ALJ also noted that Dr. Rana's June 2015 examination report noted that Plaintiff "had not been taking his medication for three weeks due to insurance issues," but "there was no evidence of lower extremity difficulty and the neurological examination was negative." (*Id.*) The ALJ further noted that Plaintiff was back on his medication by August 2015 and reported "feeling better." (*Id.* (citing AR 515).) The cited treatment records support the ALJ's findings.

Treatment records from Axis Health from April and October 2013 note that Plaintiff was negative for fatigue and pain, and had no complaints of lower extremity limitations. (AR 406-07, 410-11.) A September 2014 treatment record notes that Plaintiff's diabetes was "getting worse," but it also notes that Plaintiff "did not use [his] medication," and [t]here are no associated symptoms." (AR 423.) At a follow-up in November 2014—one day before Dr. Fu's medical source statement—Mr. Liu characterizes Plaintiff's diabetes as "stable" and states that Plaintiff was complying with his medication regimen and "has been managed with diet, oral medications and insulin." (AR 428.) The treatment record notes the following associated symptoms: "blurred vision, frequent infections, frequent urination and polydipsia." (*Id.*) A review of Plaintiff's symptoms indicated that he was negative for fatigue, joint pain, joint tenderness, and limping.

10

(AR 430.)

The ValleyCare treatment records dated April 2015 through December 2016 are likewise silent as to any symptoms suggesting the "sit, stand, and walk" limitations set forth in Dr. Fu's medical source statement. Instead, and as previously discussed, the ValleyCare records demonstrate that since June 2015, Plaintiff's "primary complaint was related to his skin infection/rash," and the remaining physical examinations in the record "were relatively normal except for his skin condition." (AR 23.)

In sum, the ALJ's discussion of Plaintiff's treatment history and the objective medical evidence constitute "specific and legitimate reasons supported by substantial evidence" for assigning only partial weight to Dr. Fu's opinion.

## II. Subjective Symptom Testimony

### A. Legal Standard

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citation omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citation omitted).

"The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 924 (9th Cir. 2002). Thus, the ALJ cannot rely on "general findings" in rejecting a plaintiff's subjective symptom testimony. *Holohan*, 246 F.3d at 1208. That said, the ALJ need not accept the plaintiff's allegations of pain as true, and "may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1112 (internal quotation marks and citations omitted).

11

Further, "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *See id.* "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas*, 278 F.3d at 959.

**B.     ALJ's Analysis**

Applying the two-step analysis, the ALJ first determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 22.) Because Plaintiff met the first part of the test, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms, or else find evidence of malingering. *Lingenfelter*, 504 F.3d at 1036. The ALJ did so.

In considering Plaintiff's subjective symptom testimony, the ALJ cited the following testimony from the February 2017 hearing:

> [Plaintiff] testified that his impairments include[ ] broken bones, reconstructive surgery on his face, and left rotator cuff surgery. He alleges that he is unable to do heavy lifting and is unable to lift his arms overhead or put his coat on comfortably. He further alleges that he is unable to reach his feet or scrub his back with his left arm. He also testified that he suffers from type 2 diabetes and that he needs to lie down for 15 minutes or he will experience tingling in his feet. He said he is able to stand 20-25 minutes and the he lies down 3 to 4 times a day. He testified that he is compliant with his medication.

(AR 22.)

The ALJ found that Plaintiff's testimony regarding the "intensity, persistence, and limiting effects of his symptoms" was inconsistent with the medical evidence of record, which indicates that Plaintiff "remains capable of performing less than light work, despite his diabetes and left shoulder condition." (*Id.*) The ALJ then discussed the medical evidence in relation to Plaintiff's testimony and discounted Plaintiff's testimony, noting that Plaintiff's treatment history, the objective medical evidence, and Plaintiff's "own report that he is able to ride a bike" did not support Plaintiff's testimony. (AR 22-23.) These reasons are specific, clear, and convincing. As previously discussed, Plaintiff's treatment records and the objective findings on examination do

12

1   not support Plaintiff's testimony regarding debilitating limitations associated with his diabetes or
2   left shoulder condition. Further, Plaintiff's self-reported activities of daily living support the
3   ALJ's determination; specifically, Plaintiff's May 2015 disability questionnaire reported that
4   Plaintiff: used a bike for transportation and lifted the bike "a few times a day," went grocery
5   shopping twice a week, did his own laundry and cleaning, and did yardwork using a "push
6   mower." (AR 269-70.) And although Plaintiff reported that riding his bike and using the push
7   mower were fatiguing, (*see id.*), those activities do not evince "totally debilitating impairments,"
8   *see Molina*, 674 F.3d at 1112 (noting that "[e]ven where [reported] activities suggest some
9   difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent
10  that they contradict claims of a totally debilitating impairment").

In sum, the ALJ's assessment of Plaintiff's subjective symptom testimony is supported by substantial evidence and does not constitute reversible error.

### III. Step-Five Determination

Plaintiff argues that the ALJ committed reversible error at step five because she concluded that Plaintiff could perform light work, but the ALJ's RFC determination is "more consistent with a range of sedentary work than a range of light work" because the RFC indicates that Plaintiff is "limited to standing and walking for 1 hour at a time and up to 4 total hours in an 8-hour day." (Dkt. No. 24 at 15.) In support, Plaintiff notes that "Social Security Ruling 83-10 provides that the ability to perform the full range of light work typically requires about 6 hours of standing and walking in an 8-hour day." (*Id.*) Defendant counters that the ALJ did not err because she properly relied on the VE's testimony at step five. (Dkt. No. 25 at 9.) The Court agrees for three reasons.

First, the VE testified that a claimant with Plaintiff's RFC could perform certain occupations defined as light work that allow individuals to "sit or stand as needed." (AR 38-41 (listing "production assembler" (DOT Code 706.687-010), "subassembler electrical equipment" (DOT Code 729.684-054), and "bench assembler" (DOT Code 706.684-022).) The ALJ's decision discussed the VE's testimony regarding the "sit/stand option" and ultimately found that, "[p]ursuant to SSR 00-4p, . . . the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (AR 25.) Because the ALJ determined that

13

the VE's testimony was consistent with the Dictionary of Occupational Titles and that the VE adequately explained the existence of the sit/stand option "based on her professional experience as a Certified Rehabilitation Counselor for over 17 years," the ALJ did not err in relying on the VE's testimony in support of her step-five determination. *See Gutierrez v. Colvin*, 844 F.3d 804, 809 (9th Cir. 2016) ("The ALJ was entitled to rely on the [vocational] expert's 'experience in job placement' to account for 'a particular job's requirements.'") (quoting SSR 00-4p, 2000 WL 1898704, at *2 (2000)).

Second, the ALJ's decision notes that Plaintiff's RFC does not indicate an ability to "perform the full range of light work," based on Plaintiff's limitations with standing and walking. (*See* AR 25.) As Plaintiff recognizes, SSR 83-10 provides that "a job is in [the light work] category when it requires a good deal of walking or standing," with "the *full range of light work*" requiring "standing or walking, off and on, for a *total of approximately 6 hours* of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5-6 (1983) (emphasis added). Here, the ALJ's decision expressly notes that Plaintiff's RFC does not reflect an ability to perform the full range of light work, but instead considers additional limitations requiring the "sit/stand option." (*See* AR 25.) Thus, the ALJ's determination—again, based on the VE's testimony—that Plaintiff's RFC reflects an ability to perform less than the full range of light work does not conflict with SSR 83-10 or otherwise evince legal error. *See Hatfield v. Berryhill*, 768 Fed. App'x 629, 632 (9th Cir. 2019) (rejecting argument that ALJ erred in accepting VE's testimony that plaintiff could perform light work where RFC limited plaintiff "to five hours of standing in a workday," because "the requirements of occupations listed in the [DOT] are maximum requirements, not the requirements of each particular job within that occupation") (citing SSR 00-4p, 2000 WL 1898704; *Gutierrez*, 844 F.3d at 807-08). Further, "the ALJ confirmed with the VE that the identified jobs were suitable for someone who could only stand or walk for [four] hours [total] in a workday." *Id.*

Finally, Plaintiff is wrong to the extent he argues that the ALJ's RFC determination describes an ability to perform a range of sedentary work versus light work based on the standing/walking limitation. SSR 83-10 provides that "at the sedentary level of exertion, periods of standing or walking should *generally total no more than about 2 hours* of an 8-hour workday,

14

and sitting should *generally total approximately 6 hours* of an 8-hour workday." 1983 WL 31251, at *5 (emphasis added). Here, the RFC provides that Plaintiff can sit for a total of 4 hours and stand or walk for a total of 4 hours of an 8-hour workday. Thus, the RFC exceeds the general requirement for sedentary work under SSR 83-10.

Accordingly, the ALJ's step-five determination does not constitute reversible error.

## CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion. While the Court is sympathetic to Plaintiff's condition, the record does not demonstrate that Plaintiff is disabled under the Social Security Act or that the ALJ erred in so finding.

This Order disposes of Docket Nos. 24 and 25.

**IT IS SO ORDERED.**

Dated: March 16, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge